UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL ANN HUGHES,

                            Plaintiff,          CIVIL CASE NO. 02-40256

v.

GENERAL MOTORS CORPORATION,              HONORABLE PAUL V. GADOLA
                                         U.S. DISTRICT JUDGE
                            Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION IN LIMINE

Before the Court are Defendant's Motion for Summary Judgment, filed on April 16, 2004, and Plaintiff's Motion in Limine, filed on June 10, 2004.  Defendant later filed a Supplemental Motion for Summary Judgment on April 25, 2005, raising additional arguments further supporting the summary judgment motion.  For the reasons stated below, the Court will grant Defendant's motion and dismiss Plaintiff's motion.

**I.      Background**

Plaintiff, Cheryl Ann Hughes, is an African-American woman over forty years of age, who began working for Defendant General Motors Corp. ("GM") as an hourly assembly worker in 1976. She was laid off in 1982, but was reclassified as a voluntary quit in 1983 for failing to report to work after being recalled.  Plaintiff then obtained her GED and an Associate's and Bachelor's degree in electrical engineering.

Plaintiff was again hired by GM in February 1995 at age 39.  She started as an associate

engineer, a "5th level" position, at the Cadillac division with a starting salary of $39,600.00. This amount was just above GM's recommended starting salary of $39,570.00 for an applicant with a Bachelor's degree in engineering. Plaintiff received a base level salary increase of 4.8% in June 1996 and a 3.2% increase in June 1997. Plaintiff obtained her Master's degree in electrical engineering at GM's expense in December 1997.

In late 1997, GM informed Plaintiff and all of the individuals in her work group that their jobs would be outsourced within one year, by the end of 1998. GM also informed Plaintiff and the other workers that if they desired to continue to work for GM, they needed to obtain a job elsewhere in the company.

On February 6, 1998, Plaintiff met with the director of her department, Steve Seaton, to voice concerns about her "lack of opportunities and promotion." Def. Mot., Ex. 12 (Apr. 16, 2004). Subsequent to this meeting, Plaintiff received an 8.4% increase in her salary. During this time, Plaintiff, along with others in her work group, searched for other employment within GM. Plaintiff first applied for a job with GM's Warren Small Car group, where she was offered a higher-paying job on February 10, 1998. Plaintiff turned down the offer because she believed that the offer was contrived after her recent meeting with Director Seaton. In her words, "I [Plaintiff] am convinced that the offer from Small Car Division was arranged. I did not want to go to Small Car Division being perceived as a troubled employee." Def. Mot., Ex. 12. (Apr. 16, 2004). Plaintiff continued to search for other employment opportunities within GM.

In November 1998, Plaintiff accepted a position with GM's Truck Group. In April 1999, Plaintiff began seeking a transfer from the Truck Group and placement in the Engineering

Development Program ("EDP") to assist her career development and to focus on engineering. During the summer of 1999, Plaintiff was accepted into the EDP, received a 10.3% base salary increase, and was reclassified as a "6th level" employee. Plaintiff was part of the Vehicle Synthesis Analysis Simulation group where she worked on circuit designs.

In November 1999, Plaintiff communicated several complaints and frustrations regarding her career path and treatment at GM to Plaintiff's supervisor and human resources representative. Plaintiff also sought to be released from the EDP program and to transfer departments. In March 2000, Plaintiff was transferred to an engineering analysis position. In June 2000, Plaintiff was reclassified as a "7th level" employee and received a 9.8% salary increase, although she remained in the same position. If she had not received a reclassification of her level, Plaintiff's salary would have been 97% of the market rate for her position. Because she was reclassified, however, her salary was only 76% of the market rate for her position.

In October 2000, Plaintiff met with human resources about her career track, where she expressed her belief that she was being "blacklisted" from transferring to another department. Plaintiff continued to apply for other employment positions. On January 30, 2001, Plaintiff met with her supervisor to discuss her performance evaluation. Her supervisor, Paul Lang, stated that he thought Plaintiff had not been hired by other divisions because she was "not enthusiastic" about her job and because she "lack[ed] initiative." Def. Mot., Ex. 10, p. 12 (Apr. 16, 2004). Notwithstanding these comments, Lang's 2000 evaluation of Plaintiff, submitted on January 31, 2001, described Plaintiff's achievements as "very good." Pl. Resp., Ex. H. (Aug. 4, 2004).

3

On February 26, 2001, Plaintiff sent a letter to GM's president and CEO, Richard Wagoner, based on GM's "open door policy" of reporting complaints. In the letter, Plaintiff discussed several historical and academic books on discrimination and chronicled her perceptions of discrimination at GM. *See* Pl. Resp., Ex. M (Aug. 4, 2004). The letter also stated that "I do not want any engineering job." Pl. Resp., Ex M, 7-8 (Aug. 4, 2004). Subsequent to the letter, a GM staff attorney, Kari Larson (formerly Kari Watson) offered to meet with Plaintiff about her allegations of discrimination. Plaintiff declined to meet with the attorney, and instead met with Susan Degrieck, a human resources representative. At this interview, Plaintiff stated that she was "not interested in engineering positions." Def. Mot., Ex. 32 (Apr. 16, 2004). Staff attorney Larson further investigated Plaintiff's complaints, reporting that there was no evidence of discrimination. Def. Mot., Ex. 33 (Apr. 16, 2004).

On July 19, 2001, Plaintiff met with human resources representative Gail Hopkins. The next day, Plaintiff sent Hopkins an email stating that Plaintiff was "absolutely not interested in obtaining an engineering position." Def. Mot., Ex. 37 (Apr. 16, 2004). On that same day, Plaintiff left a telephone message with Hopkins, where Plaintiff stated the following: "I mention exactly the position I am interested in and it has absolutely nothing to do with Engineering - that's not where my interest lie any longer . . . and again I'm not interested in obtaining any engineering position." Def. Mot., Ex. 38 (Apr. 16, 2004).

Shortly thereafter, Hopkins and Plaintiff's immediate supervisor, Barbara Mahone, decided to terminate Plaintiff's employment. On July 23, 2001, Plaintiff was offered a choice between a ten-month career transition package that required a release of her right to sue or a one-time payment of

$6,000.00 with no release requirement.  Plaintiff was given 45 days to consider the choice, but on July 31, 2001, Plaintiff declined the career transition package.  Plaintiff was officially terminated August 1, 2001, and was given a separation package where she received salary payments through November 15, 2001.

Plaintiff first sent a July 31, 2001 letter to GM President Wagoner, alleging that she was "blacklisted" and was being punished for her previous complaints of discrimination.  Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") complaint on November 30, 2004, alleging age, sex, and race discrimination, and retaliation.  The EEOC dismissed the charges, explaining their reasons in a letter dated June 19, 2002.  The Commission wrote, "There is no evidence that your employer's action was based on your sex, race, age, or in retaliation for your complaining on February 26, 2001."  Def. Mot., Ex. 42 (Apr. 16, 2004).  The EEOC issued a "Dismissal and Notice of Rights," dated July 1, 2002, which formally dismissed the charges as follows:

> "The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge."

Pl. Resp., Ex. EE (Aug. 4, 2004).

On September 24, 2002, Plaintiff filed suit in federal court, alleging nine counts.  Five of the counts arose under federal law: race discrimination in violation of 42 U.S.C. § 1981; age discrimination in violation of the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); and race discrimination, gender discrimination, and retaliation, all in violation

5

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The other four of the counts were state claims: race discrimination, age discrimination, gender discrimination, and retaliation, all in violation of Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("ELCRA"). In an order on December 12, 2002, this Court dismissed the state claims using its discretion in exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Plaintiff promptly filed her four state ELCRA claims in Oakland County Circuit Court less than a week later, on December 18, 2002. In the state court, GM subsequently filed a motion for summary disposition. On April 4, 2005, the Honorable John J. MacDonald of Oakland County Circuit Court ruled on the merits of GM's motion for summary disposition, granting the motion and dismissing Plaintiff's state law claims.

Defendant's initial summary judgment motion was filed on April 16, 2004, before the state court decision on the state law claims. In its brief, Defendant argues that Plaintiff is unable to show a prima facie case of discrimination or retaliation, or in the alternative, that Plaintiff is unable to rebut Defendant's legitimate nondiscriminatory and nonretaliatory reason for her termination of employment. In response, Plaintiff claims that there is a sufficient issue of material fact of discrimination and retaliation to let the case survive summary judgment and go forward to a jury.

After the grant of summary disposition in state court, Defendant GM filed a supplemental motion for summary judgment in this Court on April 25, 2005. The motion made the additional argument that Plaintiff's federal claims were now barred by the state court decision and by the application of the doctrines of res judicata and collateral estoppel.

## II.    Legal Standard

6

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

7

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   Analysis

## 1.   Issue Preclusion

The Court must first address the effect a state court judgment has on the federal claims before this Court. On July 15, 2002, this Court dismissed without prejudice Plaintiffs' state law

claims, declining to exercise supplemental jurisdiction over those claims.  Plaintiffs subsequently

brought the state claims in state court.  On April 4, 2005, the state court granted Defendant GM's

motion for summary disposition, dismissing all state claims after considering the facts in the light

most favorable to the nonmoving party.  GM now argues that the doctrines of res judicata and

collateral estoppel warrant summary judgment in this case.

      The Sixth Circuit has noted "the perennial confusion over the vocabulary and concepts of

the law of preclusion." *Heyliger v. State Univ. & Cmty. Coll. Sys. Of Tenn*, 126 F.3d 849, 852 (6th

Cir. 1997).  The Supreme Court has instructed that:

> the preclusive effects of former adjudication are discussed in varying and, at times,
> seemingly conflicting terminology, attributable to the evolution of preclusion
> concepts over the years.   These effects are referred to collectively by most
> commentators as the doctrine of "res judicata."   Res judicata is often analyzed
> further to consist of two preclusion concepts: "issue preclusion" and "claim
> preclusion." Issue preclusion refers to the effect of a judgment in foreclosing
> relitigation of a matter that has been litigated and decided.  This effect also is
> referred to as direct or collateral estoppel.  Claim preclusion refers to the effect of
> a judgment in foreclosing litigation of a matter that never has been litigated, because
> of a determination that it should have been advanced in an earlier suit.  Claim
> preclusion therefore encompasses the law of merger and bar.

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (citations omitted) (quoted

in *Heyliger*, 126 F.3d at 852).  In this case, the federal and state claims proceeded simultaneously

in the federal and state systems.  There is no allegation that the claims "should have been advanced

in an earlier suit." *Id.*  Rather, the question is whether the parties should be precluded from

"relitigating" certain issues that were decided first in the state court. *Id.*  Consequently, the doctrine

of issue preclusion, not claim preclusion, applies to this case.

      The Sixth Circuit has held that:

9

> [w]hen considering whether the judgment of a state court will have either type of preclusive effect on a subsequent action brought in federal court, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment.

*Heyliger*, 126 F.3d at 851-52. The Sixth Circuit has also recently held that "[u]nder Michigan law, the party asserting preclusion bears the burden of proof." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *Detroit v. Qualls*, 434 Mich. 340, 454 N.W.2d 374, 383 (Mich. 1990)). Michigan law requires a court to apply issue preclusion if:

> 1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue.

*Id.* (citing *Michigan v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31,(Mich. 1990).

In this case, the first requirement is satisfied because all of the parties before this Court were also parties to the state court litigation. The second requirement is also satisfied because there was a valid and final judgment issued by the state court through Judge McDonald's opinion and judgment. Even though that ruling may be appealed, this Court has previously held that "Michigan and federal courts agree that an appeal of a judgment does not alter the preclusive effect of the same." *Chaken v. City of Detroit*, 998 F. Supp. 779, 783 (E.D. Mich. 1998) (Gadola, J.) (citation omitted).

The third requirement is that "the same issue was actually litigated in the first proceeding." *Dominguez*, 359 F.3d at 842. As the Supreme Court has noted, "even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same

10

parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *S. Pac. R.R. Co. v. United States*, 168 U.S. 48-49 (1897). The issue common to both proceedings is whether there is a genuine issue of material fact in Plaintiff's claims of employment discrimination and retaliation, such that GM is not entitled to judgment as a matter of law.

When ruling on the Michigan motion for summary disposition, the Oakland County Circuit Court considered allegations of discrimination going back three years to September 24, 1999. This time period covers more than the time period of the statute of limitations for Title VII or ADEA claims. Since federal race discrimination claims have a longer statute of limitations, however, allegations going back to September 28, 1998 should be considered. A quick review of the events of this time period, events that were not considered by the state court judge, reveal that the events are insufficient to support a claim of racial discrimination. During the time period between September 28, 1998 and September 24, 1999, Plaintiff accepted a new position with GM's Truck Group. Plaintiff then sought a transfer from the Truck Group to the Engineering Development Program. Plaintiff was successful in achieving the transfer, received a 10.3% base salary increase, and was reclassified from a "5th" level employee to a "6th" level employee. Plaintiff did not file any complaints of discrimination during this time. Since Plaintiff made important career advancements between September 1998 and September 1999, the evidence indicates that Plaintiff was treated favorably and suffered no discrimination during this time. Therefore, any evidence supporting claims of discrimination or retaliation must come from the time period after September 24, 1999, the period that was considered by Oakland County Circuit Court Judge MacDonald when

11

deciding the state claims.

Michigan's standard for summary disposition is set out in Michigan Court Rules 2.116(C)(7) and (10): a summary disposition motion must be evaluated with all evidence considered in the light most favorable to the nonmoving party; if the evidence still fails to establish a genuine issue of material fact, then the moving party is entitled to judgment as a matter of law. *See Maiden v. Rozwood*, 461 Mich. 109, 119-20 (1999). This standard is identical to the federal standard for summary judgment motions permitted by Federal Rule of Civil Procedure 56(b).

When considering the state ELCRA age, sex, and race discrimination claims, Judge MacDonald used the standard for Title VII claims set out in the United States Supreme Court case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Using the *McDonnell* test, the state court concluded that Plaintiff's allegations did establish a prima facie case of discrimination.[1] Since there was a prima facie case of discrimination creating a presumption of discrimination, the burden shifted to Defendant "to articulate a 'legitimate, nondiscriminatory reason' for Plaintiff's termination to overcome and dispose of this presumption." *Hughes v. General Motors Corp.*, No. 02-046-254-CL, at 6 (Oakland County Cir. Ct. Apr. 4, 2005). The state court observed that Defendant had shown that Plaintiff had received several promotion and salary raises; that Plaintiff was not qualified or entitled to many of the employment positions that she applied to but did not receive; and that

---

[1]"This [establishing a prima facie case of discrimination] may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

"Plaintiff was not terminated for any discriminatory reason but rather because she expressly stated that she was not interested in an engineering position with Defendant even though she was hired as an engineer." *Id.* at 7. The state court concluded that GM had provided a legitimate nondiscriminatory reason for Plaintiff's employment termination that overcame the presumption of discrimination. The state court went on to conclude that Plaintiff had subsequently failed to demonstrate that GM's reason for termination was a mere pretext, as Plaintiff had provided no evidence besides mere speculation that GM's reasons for termination were pretextual. The state court then ruled that as a matter of law, GM's motion to dismiss Plaintiff's discrimination claims should be granted.

Consequently, not only did the state court use the same standard as would this Court when evaluating GM's summary disposition motion, it also used the identical framework this Court would use to determine the merits of Plaintiff's claims. Therefore, the third element of issue preclusion is satisfied for the discrimination claims.

The state court also separately considered Plaintiff's ELCRA retaliation claim. The state court similarly found that Plaintiff had no evidence to show that her age, sex, or race was a factor in her termination. The state court noted that the GM employees who had made the decision to terminate Plaintiff were African-American women themselves; that Plaintiff had expressed a disinterest in working in engineering, the area that she was trained in; and that even through the time period that Plaintiff complained about discrimination, Plaintiff's requests for job changes were honored as Plaintiff received several job promotions and salary raises. The state court also found a lack of retaliatory animus on the part of those who decided to terminate Plaintiff's employment.

13

Therefore, the third element of issue preclusion is satisfied for the retaliation claim.

The fourth requirement for issue preclusion is that the actually litigated issue "was necessary to the judgment." *Dominguez*, 359 F.3d at 842. Since the issues litigated by the state court were Plaintiff's claims themselves, it is clear that they were "necessary to the judgment." Thus, the fourth element is satisfied.

Finally, the Court must determine whether "the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." *Dominguez*, 359 F.3d at 842. Since the motion for summary disposition was against Plaintiff, Plaintiff had every incentive to vigorously contest the motion. There is no reason to think that Plaintiff did not have a full and fair opportunity to litigate. Therefore, this final requirement for issue preclusion has been satisfied.

Based on the preceding analysis, the Court concludes that because of the state court's ruling, Plaintiff is precluded from relitigating Plaintiff's discrimination and retaliation claims. The Court therefore finds that GM is entitled to summary judgment on account of issue preclusion.

## 2.     The Validity of Plaintiff's Claims

Alternatively, even without considering issue preclusion, the Court is convinced that when all the facts are taken in the light most favorable to the Plaintiff, there is no genuine issue of material fact and GM is entitled to judgment as a matter of law. In order to establish a valid discrimination claim that can withstand summary judgment, Plaintiff must first show a prima facie case of discrimination. This presumption of discrimination can be overcome if Defendant articulates a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff must then show that Defendant's reason is a mere pretext for discrimination. *See McDonnell Douglas Corp. v. Green*,

14

411 U.S. 792, 802-05 (1973).

In this case, Plaintiff does allege sufficient facts that create a prima facie case of discrimination: Plaintiff was a member of a minority class; she had applied to many positions in GM to which she was qualified; and she was not accepted to several positions and was eventually terminated by GM. When considering these facts in a light favorable to Plaintiff, Plaintiff has stated a prima facie case of discrimination.

Defendant GM, however, gives a legitimate nondiscriminatory reason for Plaintiff's termination: Plaintiff stated explicitly several times that she was not interested in working in an engineering position, although this is the position that GM had hired and trained Plaintiff for at GM's expense. In addition to this nondiscriminatory reason, it is undisputed that Plaintiff received several job promotions and salary increases during the time period that Plaintiff alleged discrimination. In fact, some of these promotions were accommodations in response to complaints brought by Plaintiff about her future career opportunities. Further, the GM employees making the decision to terminate Plaintiff's employment, Ms. Mahone and Ms. Hopkins, were both African-American women.

To overcome this nondiscriminatory reason, Plaintiff must demonstrate that GM's reason for termination is a mere pretext for discrimination. After analyzing all the evidence, however, the Court finds that there is insufficient evidence supporting Plaintiff's allegation that GM's reason is simply a pretext.

Similarly, Plaintiff successfully establishes a prima facie case of retaliation: Plaintiff is a member of a protected class; she engaged in protected activities such as voicing complaints of

15

discrimination; and her employment was terminated.  The Court, however, again finds that GM's nondiscriminatory reason for terminating Plaintiff overcomes the prima facie case of retaliation. Furthermore, Plaintiff provides insufficient evidence to demonstrate that GM's reason for termination is a mere pretext.  The Court finds, therefore, that GM is entitled to the dismissal of Plaintiff's claims as a matter of law.

**IV.     Plaintiff's Motion in Limine**

On June 10, 2004, Plaintiff also a motion in limine.  Because this Court finds that Defendant's motion for summary judgment should be granted, Plaintiff's claims are thereby dismissed.  Consequently, Plaintiff's motion in limine becomes moot.

**V.  CONCLUSION**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion and supplemental motion for summary judgment [docket entries 48 and 62] are **GRANTED**.

**IT IS FURTHER ORDERED** that this action, Civil Case No. 02-40256, is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's motion in limine [docket entry 52] is **DENIED AS MOOT.**

**SO ORDERED**.

Dated:  __October 12, 2005__            s/Paul V. Gadola_____
                                        HONORABLE PAUL V. GADOLA
                                        UNITED STATES DISTRICT JUDGE

16

Certificate of Service

I hereby certify that on  October 13, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Alex L. Alexopoulos; Darcie R. Brault                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____ .

s/Ruth A. Brissaud

Ruth A. Brissaud, Case Manager

(810) 341-7845

17